UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL DEAN JONES,<br><br>    Petitioner,<br><br>    v.<br><br>RON BARNES, Warden,<br><br>    Respondent.<br>_____ / | No. C 12-4244 SI (pr)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY** |

## INTRODUCTION

Michael Dean Jones filed this pro se action seeking a writ of habeas corpus under 28 U.S.C. § 2254. The matter is now before the court for consideration of the merits of the habeas petition. For the reasons discussed below, the petition will be denied.

## BACKGROUND

Following a jury trial in Del Norte County Superior Court, Jones was convicted of gross vehicular manslaughter while intoxicated. "On December 16, 2010, the trial court, based on the conviction being a third strike and other aggravating factors, sentenced [Jones] to a prison term of 34 years to life." Docket # 2 at Appendix A (Cal. Ct. App. Opinion), p. 3.

Jones appealed. His conviction was affirmed by the California Court of Appeal and his petition for review was denied by the California Supreme Court.

Jones then filed this action, seeking a writ of habeas corpus. On October 9, 2012, this court issued an order to show cause on the claim that Jones' right to due process was violated

because the evidence was insufficient to support the conviction in that "there was insufficient evidence that [Jones'] driving was impaired by reason of drug or alcohol consumption."[1] Docket #2, p.4.  Respondent filed an answer and Jones filed a traverse.

The following factual background is taken from the order of the California Court of Appeal:

> At about 9:15 p.m. on November 9, 2008, defendant was driving southbound on Parkway Drive, a two-lane road in Crescent City. Ivan Beckendorf, driving in the opposite direction, turned left across the southbound lane to pull into his driveway. Defendant crashed into the side of Beckendorf's truck. Though defendant claims he did not exceed the 50-mile-per-hour posted speed limit on Parkway Drive, a California Highway Patrol accident reconstruction specialist estimated his speed before impact was between 94 and 106 miles per hour. Beckendorf and defendant were seriously injured and taken to a hospital. Defendant's passenger and girlfriend, Jolynda Peters, died.
>
> On May 13, 2009, the Del Norte County district attorney charged defendant with gross vehicular manslaughter while intoxicated with alcohol or drugs, a violation of Penal Code section 191.5, subdivision (a).
>
> During trial, the district attorney presented evidence of defendant's level of intoxication [FN1] during the crash. Kay Belschner, a senior criminalist with the California Department of Justice, testified defendant's blood-alcohol level was .07 percent two hours following the crash. Such a level, she said, could impair a driver. Belschner also testified defendant's blood-alcohol could have been even higher when the crash occurred, as defendant's body was likely eliminating alcohol at some point during the two hours following the crash; however, she lacked the information she would have needed, such as defendant's drinking history that day, to predict defendant's blood-alcohol level at the time of the crash with a degree of certainty.
>
>> FN1. Because, as discussed below, we conclude there was sufficient evidence of defendant being under the influence of alcohol, we need not and do not consider whether there was sufficient evidence of him being under the influence of drugs. We therefore omit extraneous facts about defendant's use of drugs.
>
> Officer Randall, one of two California Highway Patrol officers who responded to the crash, also testified. He had 10 years on the job and was certified as a drug recognition expert following a two-week training program. As Officer Randall approached defendant's car, he saw Peters' body lying over the center console. The top half of her body had crossed from the passenger side into the driver side of the car and was resting behind defendant's back. Randall told defendant not to move Peters' body, but defendant, saying nothing, pushed the body back to the passenger side of the car.

---

[1] This claim was alleged in the petition for review that was attached to the federal petition. The court liberally construed the federal petition to incorporate the petition for review and found the claim cognizable.

2

> It was then Randall smelled alcohol coming from the car. Randall could not conduct field sobriety tests (such as taking blood pressure and temperature and other measurements) because of defendant's combative, uncooperative nature. According to Randall, defendant aggressively tried to get out of the car, tried to prevent emergency medical personnel from helping him, and did not seem seriously injured. Once defendant was subdued and in the care of the medics, Randall could then discern the smell of alcohol was coming from defendant's body and breath. Randall concluded defendant was intoxicated based on the smell of his breath, an open beer bottle left on the driver's side of the car, his lack of judgment, poor driving, lack of concern for Peters, and unusual pain tolerance. Randall also noticed defendant was disorientated. However, Randall conceded the skid marks defendant's car left at the crash site were very straight, which would be consistent with a driver in control of his car.
>
> Sergeant Gray also worked the crash site and afterwards followed defendant to the hospital. Sergeant Gray, like Officer Randall, had training in drug recognition. He too testified defendant was intoxicated and impaired at the time of the crash. He based his conclusion on the circumstances of the collision (including defendant's speeding), the open bottle in defendant's car, and the odor of alcohol he smelled near defendant's body in the hospital emergency room. On cross-examination, he admitted the smell of alcohol he had noticed on defendant's body could have resulted from the beer bottle spilling on defendant during the crash and may not have been from his breath.
>
> Defendant denied he was impaired at the time of the crash. He denied consuming alcohol or drugs on the day of the crash and claimed the beer bottle in his car was left by a friend. And he denied speeding.
>
> Defendant[']s[] uncle testified defendant visited him at his home less than an hour before the crash. The uncle testified defendant was sober and not under the influence of drugs or alcohol at the time.
>
> On November 17, 2010, a jury found defendant guilty of gross vehicular manslaughter while intoxicated. On December 16, 2010, the trial court, based on the conviction being a third strike and other aggravating factors, sentenced defendant to a prison term of 34 years to life.
>
> Defendant filed a notice of appeal on January 13, 2011. He challenges the sufficiency of the evidence underlying his conviction.

Cal. Ct. App. Opinion, pp. 1-3; Ans. Ex. 6.

## JURISDICTION AND VENUE

This court has subject matter jurisdiction over this habeas action for relief under 28 U.S.C. § 2254. 28 U.S.C. § 1331. This action is in the proper venue because the challenged conviction occurred in Alameda County, California, within this judicial district. 28 U.S.C. §§ 84, 2241(d).

3

## EXHAUSTION

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. *See* 28 U.S.C. § 2254(b), (c). The parties do not dispute that the state judicial remedies were exhausted for the claims in the petition.

## STANDARD OF REVIEW

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law

4

erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

## DISCUSSION

I.  Due process claim based on insufficient evidence

Jones claims that there was insufficient evidence to support the conviction for gross vehicular manslaughter while intoxicated because there was insufficient evidence that his driving was impaired by reason of drug or alcohol consumption.

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). A state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt therefore states a constitutional claim, *see Jackson v. Virginia*, 443 U.S. 307, 321 (1979), which, if proven, entitles him to federal habeas relief, *see id.* at 324. *See, e.g., Wigglesworth v. Oregon*, 49 F.3d 578, 582 (9th Cir. 1995) (writ granted where Oregon procedure of allowing lab reports regarding drug analyses to be admitted into evidence without authenticating testimony relieved state of its burden to prove beyond reasonable doubt all elements of crime charged); *Martineau v. Angelone*, 25 F.3d 734, 739-43 (9th Cir. 1994) (writ granted where evidence found insufficient to convict defendants of child abuse based on delay in seeking medical care for child).

A federal court reviewing collaterally a state court conviction, as in the case at bar, does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1992), *cert. denied*, 510 U.S. 843 (1993). The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Jackson*, 443 U.S. at 319). Only if no

5

rational trier of fact could have found proof of guilt beyond a reasonable doubt, has there been a due process violation. *Jackson,* 443 U.S. at 324; *Payne*, 982 F.2d at 338; *Miller v. Stagner*, 757 F.2d 988, 992-93 (9th Cir.), *amended,* 768 F.2d 1090 (9th Cir. 1985), *cert. denied*, 475 U.S. 1048, *and cert. denied*, 475 U.S. 1049 (1986); *Bashor v. Risley*, 730 F.2d 1228, 1239 (9th Cir.), *cert. denied*, 469 U.S. 838 (1984).

The state appellate court denied this claim, finding that there was sufficient evidence by which a reasonable jury could find Jones was guilty of gross vehicular manslaughter[2] beyond a reasonable doubt:

> "'In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] Reversal on this ground is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]." [Citation.]' (*People v. Bolin* (1998) 18 Cal.4th 297, 331...; accord, *People v. Steele* (2002) 27 Cal.4th 1230, 1249....)" (*Torres, supra*, 173 Cal.App.4th at p. 983.) If circumstances reasonably justify the jury's finding on an element of the offense, "'"the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding." [Citation.]' [Citation.]" (*People v. Solomon* (2010) 49 Cal.4th 792, 816; *People v. Lewis* (2001) 25 Cal.4th 610, 643.)
>
> It remains "the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth of the facts on which the determination depends." (*People v. Jones* (1990) 51 Cal.3d 294, 314.) Further, "[i]t is not our function to decide whether the evidence proves the existence of [an] element [of an offense] beyond a reasonable doubt, as that finding and weighing of the evidence has already been performed by the trier of fact at the trial level." (*People v. Gallardo* (1994) 22 Cal.App.4th 489, 492; see also *Jackson v. Virginia* (1979) 443 U.S. 307, 318-319 [a court does not "'ask itself whether *it* believes the evidence at the trial established guilt beyond a reasonable doubt."'].)
>
> Here, the jurors could reasonably credit the investigating police officers' conclusion that defendant was under the influence of alcohol during the crash. The officers pointed to the smell of alcohol in defendant's car and on his breath;

---

[2] Under California law, "'Gross vehicular manslaughter while intoxicated is the unlawful killing of a human being without malice aforethought, in the driving of a vehicle, where the driving was in violation of Section 23140, 23152, or 23153 of the Vehicle Code... with gross negligence.' (Pen. Code, § 191.5, subd. (a).)" Cal. Ct. App. Opinion, p. 4.
"A person is under the influence of alcohol or a drug when, as a result of consuming it, that person's '"physical or mental abilities are impaired"' such that he or she '"no longer has the ability to drive a vehicle with the caution characteristic of a sober person of ordinary prudence under the same or similar circumstances."' (*McDonald v. Department of Motor Vehicles* (2000) 77 Cal.App.4th 677, 686-687; [citation omitted.])." <u>Id.</u>

6

> defendant's driving; his aggressive, combative, and uncooperative behavior; his careless treatment of the deceased; his unusual pain tolerance; and his disorientation. The officers' conclusion was corroborated by the blood test two hours after the crash showing defendant's blood-alcohol level was .07, a level capable of impairing a driver. (See *People v. Gallardo*, *supra*, 22 Cal.App.4th at p. 494 [a much lower .03 blood-alcohol level corroborated conclusion of intoxication in gross vehicular manslaughter case].) Indeed, defendant's blood alcohol level, according to the Department of Justice criminalist, could well have been higher at the time of the crash. Further, the testimony of the accident reconstruction specialist demonstrated defendant was driving approximately 50 miles per hour over the speed limit, indicating a degree of recklessness reasonably associated with intoxication. With this evidence before them, jurors could reasonable disregard defendant's testimony that he had consumed no alcohol on the day of the crash and was unimpaired, and find him guilty beyond a reasonable doubt.

Cal. Ct. App. Opinion, pp. 4-6.

Viewing the evidence here in the light most favorable to the prosecution, it is clear that a rational trier of fact could have found that Jones was under the influence of alcohol at the time of the crash: a criminalist testified that Jones' blood-alcohol level of .07 percent two hours following the crash could have impaired his driving and that the level could have been higher when the crash occurred; Officer Randall, who was one of the first officers at the scene, noted Jones' combative and uncooperative behavior and concluded that Jones was intoxicated based on "the smell of [Jones'] breath, an open beer bottle left on the driver's side of the car, [Jones'] lack of judgment, poor driving, lack of concern for Peters, and unusual pain tolerance"; and Sergeant Gray, who also worked at the crash site and followed Jones to the hospital, testified that Jones was intoxicated and impaired at the time of the crash based on "the circumstances of the collision (including [Jones'] speeding), the open bottle in [Jones'] car, and the odor of alcohol he smelled near [Jones'] body in the hospital emergency room." *See supra* at 2-3. Evidence weighing in favor of Jones included Officer Randall's concession that the straight skid marks left by Jones' car at the crash site were consistent with a driver in control of his car, Sergeant Gray's admission that the smell of alcohol coming from Jones could have resulted from the beer bottle spilling on Jones during the crash rather from his breath, Jones' uncle testimony that Jones was sober when he saw him less than hour before the crash, and Jones' own testimony denying that he was impaired or had consumed any alcohol or drugs the day of the crash. *Id.* at 3. It was

7

1 well within the jury's discretion to weigh the credibility of the officers' testimony against that
2 of Jones and his uncle, and a jury's credibility determinations are entitled to near-total deference
3 under *Jackson*.[3]  *See Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004).  Here, there was
4 sufficient evidence for a rational jury to conclude that Jones was intoxicated and thereby
5 impaired at the time of the crash.  Jones presents nothing in his traverse to persuade the court
6 otherwise.  In sum, Jones has failed to show that *no* rational trier of fact *could have* found proof
7 of guilt beyond a reasonable doubt to warrant habeas relief.  *Jackson,* 443 U.S. at 324 (emphasis
8 added); *Payne*, 982 F.2d at 338.

The California Court of Appeal's rejection of Jones' due process claim alleging insufficient evidence in support of the gross vehicular manslaughter while intoxicated conviction was not contrary to, or an unreasonable application of, clearly established federal law. Accordingly, Jones is not entitled to habeas relief.

**CONCLUSION**

For the foregoing reasons, the petition for writ of habeas corpus is DENIED.  A certificate of appealability will not issue.  Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Jones may seek a certificate of appealability from the Ninth Circuit Court of Appeals.  The clerk shall enter judgment in favor of respondent, and close the file.

IT IS SO ORDERED.

DATED: January 16, 2014

SUSAN ILLSTON
United States District Judge

---

[3]Except in the most exceptional of circumstances, *Jackson* does not permit a federal habeas court to revisit credibility determinations.  See *id*. (credibility contest between victim alleging sexual molestation and defendant vehemently denying allegations of wrongdoing not a basis for revisiting jury's obvious credibility determination); *see also People of the Territory of Guam v. McGravey*, 14 F.3d 1344, 1346-47 (9th Cir. 1994) (upholding conviction for sexual molestation based entirely on uncorroborated testimony of victim).